UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **ERIC DEWAYNE CURTIS** | : | **DOCKET NO. 17-cv-562** |
| **VERSUS** | : | **JUDGE MINALDI** |
| **MICHELS CORPORATION ET AL.** | : | **MAGISTRATE JUDGE KAY** |

**REPORT AND RECOMMENDATION**

Before the court is a Motion to Remand [doc. 12] filed by plaintiff Eric Dewayne Curtis ("Curtis"). Defendant Michels Corporation ("Michels") opposes the motion. Doc. 19. For reasons stated below, **IT IS RECOMMENDED** that the Motion to Remand be **GRANTED**.

**I.**
**BACKGROUND**

This action arises from injuries allegedly sustained by Curtis on February 2, 2016, near the town of Burlington, Vermont, in the course of his work as chief pipe inspector for McDaniel Technical Services, Inc. ("McDaniel"). Doc. 1, att. 2, p. 2. Defendant Michels had been hired by defendant Vermont Gas Systems, Inc. ("VGS") to construct a natural gas pipeline. *Id.* According to the complaint, William "Bill" Fee, a/k/a Bill N. Fee, a Michels employee who is domiciled in Elizabeth, Allen Parish, Louisiana, was working as testing foreman for Michels on the same pipeline site. *Id.* at 1–2. On February 2, 2016, Curtis was assisting Fee in removing "pigs" that had accumulated at one end of the pipeline.[1] Curtis alleges that, rather than using the customary "pig

---

[1] In his complaint Curtis provides the following explanation:
    After welding the pipe to make a section approximately 10.75-miles in length, it was then hydro-tested; a process in which the line is filled with water and pressurized to test for leaks. After the

trap," described at note 1, Michels instead chose to dig a pit and use a deflector system that would cause the pigs to shoot out as they exited the line on the receiving end.[2] *Id.* at 2.

On February 2, 2016, Curtis states, he was assisting Fee in removing pigs from the pit dug by Michels. *Id.* His account of his injuries reads as follows:

> Shortly after entering the pit, Curtis was struck in the right hip by a "pig" traveling so forcefully that he was knocked out of his knee-high rubber boots and spun around. He was then struck by a second pig in his groin. Petitioner, remaining conscious throughout this ordeal[,] was pulled out of the pit to avoid further injury shortly after the incident, but not before sustaining serious and permanent bodily injury.

*Id.* at 2–3. He maintains that his injuries were caused by the negligence of the defendants—VGS, Michels, and Fee—and accordingly filed suit on March 23, 2017, in the 33rd Judicial District Court, Allen Parish, Louisiana, where Fee is domiciled. *Id.* at 3–4. In relevant part to this motion, he alleges that defendants Fee and Michels are liable for "failing to warn Plaintiff of the danger of entering the pit, failing to install the proper equipment on the receiving end of the line to catch the pigs as they exited the pipe, and failing to ascertain if any pigs remained in the pipeline before entering the pit." *Id.* at 3. He also alleges that Fee

> breached a personal duty owed directly to Curtis, i.e., by failing to discharge the obligation with the degree of care required by ordinary prudence under the same or similar circumstances; and by not acting upon Fee's actual knowledge of the risk of harm which resulted from Fee's breach of duty.

*Id.* He raises a negligence claim against VGS based on similar allegations. *Id.* at 4.

---

water is drained from the Pipeline, the inside of the pipe must be dried and cleaned. This task is performed by pushing "pigs" through the line by the use of high pressure nitrogen. Pigs may be made of plastic or foam and are normally loaded into a "pig launcher" on the sending end and caught in a "pig trap" on the receiving end. The pig trap provides a secure place to stop the pig; it is then removed by opening a flange or door on the trap.

Doc. 1, att. 2, p. 2.

[2] Curtis alleges that this was intended as a time and labor saving system, because Michels would not need to have personnel present to remove pigs from the trap at the receiving end. Doc. 1, att. 2, p. 2.

Michels was served in this matter on April 3, 2017. Doc. 1, att. 4, p. 1. It filed a timely notice of removal to this court with consent of VGS on April 24, 2017, alleging federal jurisdiction based on diversity of citizenship, 28 U.S.C. § 1332.[3] Doc. 1. It also alleged that Fee, who shares Louisiana citizenship with Curtis, was improperly joined to the case for the purpose of destroying diversity, and that his citizenship should therefore be disregarded. *Id.* at 3–4.

Curtis filed the instant motion to remand on May 23, 2017, disputing the allegation of improper joinder. Doc. 12. Michels opposes the motion. Doc. 19. Fee had not been served at the time of removal, but a summons for him was issued on June 12, 2017, pursuant to a request by Curtis that same day.[4] Doc. 18.

## II.
### LAW & ANALYSIS

### A. *Choice of law*

As an initial matter, we must resolve whether Vermont or Louisiana law applies to the substantive aspects of the case, a question the parties open but do not resolve.

A federal court sitting in diversity jurisdiction must apply the choice of law rules of the state in which it sits. *Williams v. Liberty Mut. Ins. Co.*, 741 F.3d 617, 620 (5th Cir. 2014) (citations omitted). Thus Louisiana's choice of law principles apply in determining which state's substantive law applies.

Louisiana's general conflict of law provision for delictual and quasi-delictual obligations provides that such actions are "governed by the law of the state whose policies would be most

---

[3] According to the Notice of Removal, Curtis is a resident and domiciliary of Morehouse Parish, Louisiana. Doc. 1. Michels was incorporated in Wisconsin and has its principal place of business in that state. Doc. 1, p. 3. VGS was incorporated in Vermont and has its principal place of business in that state. *Id.*

[4] Therefore, as Michels notes, Fee's consent to removal was not required, regardless of whether Fee is improperly joined. *See* 28 U.S.C. § 1446(b)(2)(A) (Upon removal, "all defendants **who have been properly joined and served** must join in or consent to the removal of the action.") Fee does not contest this issue and so we dispose of it here.

-3-

seriously impaired if its laws were not applied to that issue." LA. CIV. CODE art. 3542. Louisiana law also provides that "[i]ssues pertaining to standards of conduct and safety are governed by the law of the state in which the conduct that caused the injury occurred, if the injury occurred in that state or in another state whose law did not provide for a higher standard of conduct." *Id.* at art. 3543. Otherwise, "those issues are governed by the law of the state in which the injury occurred, provided that the person whose conduct caused the injury should have foreseen its occurrence in that state." *Id.* If both the conduct and injury occur in the same state, that state "has the best, if not the exclusive, claim for applying its law." *Id.* at art. 3543, cmt. (d). Article 3543's provisions, when applicable, generally prevail over those of Article 3542. *Id.* at art. 3543, cmt. (b).

The claims against Fee involve issues of conduct and safety. In this matter, the conduct and injury occurred in Vermont. Therefore Article 3543 mandates that Vermont law govern Curtis's negligence claims.[5]

### B. Motion to Remand

#### 1. *Improper joinder standard*

Any civil action brought in a State court of which the district courts have original jurisdiction may be removed to the proper district court. 28 U.S.C. § 1441(a). District courts have original jurisdiction over all civil actions between citizens of different states where the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a)(1). The removing party bears the burden of showing that removal was procedurally proper and that federal jurisdiction exists. *See De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995). The burden of persuasion on a party asserting improper joinder is a "heavy one." *Kling Realty Co., Inc. v.*

---

[5] *See, e.g.*, *McGee v. Arkel Intern., LLC*, 671 F.3d 539, 542–46 (5th Cir. 2012) (Under Article 3543, Iraqi rather than Louisiana law applied to merits of wrongful death action brought by deceased servicemember's parents based on allegations of negligent maintenance of generator by government contractor in Iraq).

*Chevron USA, Inc.*, 575 F.3d 510, 514 (5th Cir. 2009). All factual allegations are evaluated in the light most favorable to the plaintiff, with the court resolving all contested issues of fact and ambiguities of state law in the plaintiff's favor. *Guillory v. PPG Industries, Inc.*, 434 F.3d 303, 309 (5th Cir. 2005); *Davidson v. Georgia-Pacific, LLC*, 819 F.3d 758, 765 (5th Cir. 2016).

If removal is based on a claim that a non-diverse party has been improperly joined, then the removing party must establish either "actual fraud in the pleading of jurisdictional facts" or "an inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Smallwood v. Ill. Cent. R.R.*, 385 F.3d 568, 573 (5th Cir. 2004) (citing *Travis v. Irby*, 326 F.3d 644 (5th Cir. 2003)). Only the latter method is relevant here as no fraud is alleged. Thus the relevant question is "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against the in-state defendant which, stated differently, means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood*, 385 F.3d at 573. However, "[a] 'mere theoretical possibility of recovery under local law' will not preclude a finding of improper joinder." *Id.* at 573 n. 9 (quoting *Badon v. RJR Nabisco, Inc.*, 236 F.3d 282, 286 n. 4 (5th Cir. 2000)).

When determining whether a nondiverse defendant was improperly joined, the court must first look to the allegations contained in the complaint and determine whether the plaintiff can survive a Rule 12(b)(6) challenge for failure to state a claim. *Davidson*, 819 F.3d at 765. If the allegations in the complaint satisfy Rule 12(b)(6)'s standards but the complaint either misstates or omits "discrete facts that would determine the propriety of joinder . . . the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry." *Id.* (quoting *Smallwood*, 385 F.3d at 573).

*2. Application*

The requirements for establishing a negligence claim under Vermont law square with those set forth in other common law jurisdictions: a plaintiff must show that the defendant owed the plaintiff a duty of care, the defendant breached that duty, the breach was the proximate cause of plaintiff's injuries, and the plaintiff suffered damages. *E.g.*, *Morris v. Am. Motors Corp.*, 459 A.2d 968, 971 (Vt. 1982). Duty is defined as "an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct towards another." *Buxton v. Springfield Lodge No. 679, Loyal Order of Moose, Inc.*, 99 A.3d 171, 174 (Vt. 2014) (quotation omitted). In a negligence claim, "[t]he existence of a duty is primarily a question of law." *Rubin v. Town of Poultney*, 721 A.2d 504, 506 (Vt. 1998). A negligence action fails if the plaintiff cannot establish a duty on the part of the defendant. *Id.*

An employer has a general duty to provide a safe workplace.[6] *Chayer v. Ethan Allen, Inc.*, 954 A.2d 783, 792 (Vt. 2008). As Michels notes, it does not appear that Vermont courts have specifically addressed the duty of care owed between employees of separate contractors working on the same job site.[7] Any claim against Fee would still require finding a personal duty toward

---

[6] Vermont courts recognize a co-employee exception to the worker's compensation statute exclusivity provisions, so that co-employees may be sued as liable third parties as long as their conduct is not part of the employer's duty to the injured worker. *See Garger v. Desroches*, 974 A.2d 597, 599 (Vt. 2009) (explaining the development of this approach through Vermont's adoption of the "Wisconsin rule.") For a co-employee to be considered separate from the employer, and thus subject to suit, he "must *not* be involved in performing a nondelegable duty of the employer and must *not* be exercising managerial prerogatives—because both of these activities indicate that the individual is acting as an employer." *Gerrish v. Savard*, 739 A.2d 1195, 1200 (Vt. 1999) (emphasis in original). In this context, the courts affirm that "[t]he duty to provide a safe workplace is a nondelegable duty that is the employer's alone." *Garger*, 974 A.2d at 599 (citing *Gerrish*, 739 A.2d at 1199).
 Curtis argues that cases discussing this "nondelegable duty" are limited to consideration of worker's compensation exclusivity, and therefore have no bearing on a general discussion of Fee's duties. We agree that the firm distinctions are tailored to worker's compensation exclusivity discussions, and that these cases do not necessarily stand for the proposition that an employee may not assume part of this duty – merely that this assumption would not create third party liability in evasion of worker's compensation exclusivity, which is not the basis used by Michels to argue that there is no possibility of recovery against Fee. However, under the general principles of agency law discussed *infra*, we are still required to find that a personal duty exists before Fee may be held liable.
[7] However, as Michigan courts have noted, though subcontractors might not owe each other or each other's employees a special duty, they are still required under the common law to act in a manner that does not cause unreasonable danger

-6-

Curtis.[8] We therefore look to general negligence principles to determine whether there was a duty and breach.

An actor ordinarily has a duty to exercise reasonable care when his conduct creates a risk of physical harm. Restatement (Third) Torts: Phys. & Emot. Harm § 7. As Vermont courts have recognized, under the general principles of common law negligence, duty and breach thereof are based on a showing that the defendant had "knowledge or reasonably was chargeable with the knowledge that his act or omission involved danger to another." *Endres v. Endres*, 968 A.2d 336, 340 (Vt. 2008) (quoting *Largess v. Tatem*, 291 A.2d 398, 401 (Vt. 1972)). Thus a plaintiff may demonstrate a breach of duty by showing a defendant's actual or constructive knowledge of the risks of his behavior. *Id.* at 341.

Curtis's allegations against Fee fall into two categories: his conduct on the day of the injury, failing to ensure that the line was clear or to warn Curtis that more pigs were coming, and his role in the company's decision to use a deflector system instead of a pig trap and alleged failure to repair same. *See* note 1, supra. We look first to the second category of allegations.

Curtis states by affidavit that he entered the pit to talk to Fee about the fact that pigs were coming through the pipe in a damaged state. Doc. 20, att. 1, p. 1. Although Fee denies it, Curtis declares that his presence was essential to the job and tasks being performed by Michels, and that when he entered the pit, he "was doing exactly what [he] was hired to do." *Id.* at 2; *see* doc. 19, att. 1, p. 3. In an affidavit submitted in opposition to the motion, Fee states that he was a

---

to the person or property of another. *Ghaffari v. Turner Const. Co.*, 708 N.W.2d 448, 465–66 (Mich. Ct. App. 2005) (citations omitted).

[8] Barring a statutory exception, an agent is liable to third parties harmed by his tortious conduct, even if that tortious act occurred within the scope of the agency relationship. Restatement (Third) Agency, § 7.01. However, as the Restatement also notes,

> [a]n agent's breach of a duty owed to the principal is not an independent basis for the agent's tort liability to a third party. An agent is subject to tort liability to a third party harmed by the agent's conduct **only when the agent's conduct breaches a duty that the agent owes to the third party**.

*Id.* at § 7.02 (emphasis added).

supervisor/foreman at Michels and that his duties included hydro-testing the pipeline. Doc. 19, att. 1, pp. 1–2. However, he makes no representations concerning the selection of a deflector system over a pig trap, or the allegation that one of the deflectors was broken and had not been repaired. *See id.* at 1–3.

Given Fee's admitted position of authority and his failure to refute these allegations, Michels cannot demonstrate that there is no possibility of recovery against him. The way in which these pigs were contained as they exited the pipeline evidently had safety implications to others on the job site. Assuming that Fee did select the system, he may have had a duty to others on the site, including Curtis, to select a safe one. Likewise, assuming that he received notice that a deflector was broken, he may have had a duty to others who would have been in the area to repair it. We cannot find no possibility of recovery on these claims,[9] and so cannot conclude that Fee was improperly joined to this action. Accordingly, the motion to remand should be **GRANTED** based on lack of complete diversity.

### III.
### CONCLUSION

Based on the foregoing, **IT IS RECOMMENDED** that the Motion to Remand be **GRANTED** and that this matter be remanded to the 33rd Judicial District Court, Allen Parish, Louisiana.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and

---

[9] We make no determination here as to whether Michels has shown that there is no possibility of recovery against Fee on the other claims.

Recommendation within fourteen (14) days of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

THUS DONE this 9th day of August, 2017.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE